**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**ESSEX VICINAGE**

| | |
|---|---|
| MARK BIANCHI, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>RIKIN PATEL, an individual,<br><br>Defendant. | Civil Case No. 2:26-cv-_____<br><br>**COMPLAINT FOR:**<br><br>1. **Defamation Per Se**<br>2. **Defamation Per Quod**<br>3. **Trade Libel/Commercial Disparagement**<br>4. **Intentional Interference with Prospective Economic Advantage**<br>5. **Negligent Interference with Prospective Economic Advantage**<br><br>**DEMAND FOR TRIAL BY JURY** |

Plaintiff Mark Bianchi ("Bianchi" or "Plaintiff"), for his complaint against Defendant Rikin Patel ("Patel" or "Defendant"), alleges as follows:

## INTRODUCTION

1. This action arises from a deliberate campaign of false and defamatory statements made by Defendant Rikin Patel against his former business colleague, Plaintiff Mark Bianchi, a professional operating in the highly reputation-dependent charitable partnership investment industry. After their business relationship ended in 2024, Patel embarked on a systematic effort to destroy Bianchi's professional reputation by spreading false statements to industry participants accusing Bianchi of criminal activity, substance abuse, and dishonest business practices.

2. Patel's defamatory statements were particularly egregious. He falsely accused Bianchi of being a "junkie" with "drinking," "drug," and "gambling problems." He called Bianchi a "f*cking criminal" and a "piece of sh*t." He claimed Bianchi was a "backstabber" who had "stolen" business products and was "risky to work with." Each of these statements were categorically false, made with knowledge of their falsity, and calculated to destroy Bianchi's livelihood.

3. Patel's statements were not stray insults or opinions. They were conveyed as assertions of fact, made to key players in the close-knit industry, by someone who had worked

1

closely with Bianchi and who knew that listeners would likely credit his accusations as credible insider information.

4.    In the financial services industry, reputation is paramount. Trust is the foundation upon which all business relationships are built. Accusing a professional of substance abuse, criminal conduct, and theft is career-ending. Defendant Patel knew this. Now as a competitor of Bianchi in the same industry, Patel's goal was to destroy Bianchi's reputation among existing and potential clients, as well as existing and prospective partners and advisors, and then divert those clients and partners to himself for his own financial benefit.

## THE PARTIES

5.    Plaintiff Mark Bianchi is, and at all relevant times mentioned herein was, an individual domiciled in and a citizen of the State of Tennessee.

6.    Defendant Rikin Patel is, and at all relevant times mentioned herein was, an individual domiciled in and a citizen of the State of New Jersey.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over Plaintiff's claims under and pursuant to 28 U.S.C. § 1332(a) because complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff Mark Bianchi is a citizen of the State of Tennessee. Plaintiff is informed and believes, and on that basis alleges, that no Defendant is a citizen of the State of Tennessee.

8.    This Court has personal jurisdiction over Defendant Patel because he is domiciled in and a citizen of the State of New Jersey.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant Patel resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

10.    The Newark Vicinage of the District of New Jersey is the proper division for this action because Defendant Patel resides in Bergen County.

2

## GENERAL ALLEGATIONS

11.    Plaintiff Bianchi is an accomplished entrepreneur with extensive experience in the charitable partnership financial structures industry. These sophisticated investment vehicles allow high-net-worth individuals to make charitable contributions through pass-through entities while obtaining tax benefits consistent with the Internal Revenue Code. Within the space, Bianchi has developed and operated a business venture through which he has provided charitable partnership investment structures and related financial services (the "Charitable Impact Program"). Given the highly regulated nature of the industry, Bianchi's reputation for integrity, diligence, and compliance is essential to his trade.

12.    In 2024, Bianchi collaborated with Geoffrey Dietrich (a tax attorney based in Texas) and Defendant Patel to develop and market charitable partnership investment structures, including what became known as the "Tech2Head Offering." Bianchi and Patel were particularly talented at developing and implementing tax mitigation strategies, a highly attractive service and product class for financial advisors to offer their high-net-worth clients. Through that work, Patel interacted directly with Bianchi, observed his business practices, and became familiar with Bianchi's relationships with advisors, referral sources, and other key contacts in the industry.

13.    Bianchi's son, Cristian, worked as an administrative assistant to Patel during this collaboration. This arrangement gave Patel intimate knowledge of Bianchi's family relationships—a position Patel would later weaponize in his defamation campaign against Bianchi.

14.    During their collaboration, Bianchi and Patel worked with Kingswood U.S., a national wealth management firm, on various financial offerings. They also worked together to develop relationships with financial advisors and industry professionals throughout the United States.

15.    By October 2024, the business relationship between Bianchi, Patel, and Dietrich had deteriorated. In early November, 2024, Bianchi (through his involvement with Head Genetics, Inc.) and Dietrich's entity Solidaris Capital, LLC, executed a comprehensive Confidential Termination Agreement, after which Bianchi was free to pursue his own business ventures in the

charitable partnership space, which he proceeded to do in late 2024.

16.     On December 13, 2024, Dietrich's affiliates filed suit against Bianchi and Head Genetics in Texas state court seeking to challenge Bianchi's business activities.

17.     The Texas court entered temporary restraining orders on December 18, 2024, and February 5, 2025. Critically, these orders were: (a) entered subject to Head Genetics' special appearance contesting jurisdiction; (b) limited to restricting use of three specific documents from the 2024 offering; and (c) explicitly non-adjudicative, with no findings of wrongdoing or liability, and by their own terms effectively on a temporary basis pending the hearing on a preliminary injunction.

18.     The Texas orders did not prohibit Bianchi from conducting business, developing new offerings, or working with new partners. And they certainly did not declare Bianchi a criminal or validate any of Patel's subsequent defamatory statements.

19.     Beginning in or about November 2024, Patel undertook a campaign of false and defamatory statements specifically designed to damage Bianchi's professional reputation and interfere with his business relationships.

20.     In late November or early December 2024, after Bianchi's departure from the business group, senior representatives at Kingswood U.S. inquired about why Bianchi was no longer working with the group. Patel responded by stating that Bianchi was a "junkie" who had "drinking" and "drug problems." During that same conversation, Patel falsely claimed that Bianchi was a "backstabber" who had "stolen" Dietrich's financial products and was "risky to work with."

21.     Those statements were false. Bianchi does not have drug or alcohol problems and did not steal any financial products or business models from anyone and was not "risky to work with."

22.     These statements were particularly damaging because they were made in the context of the financial services industry, where sound judgment, good character, and integrity are critical. Substance abuse allegations would disqualify someone from a fiduciary responsibility of handling client assets. Patel made these statements knowing they would spread within the close-

knit wealth management industry and damage Bianchi's standing and relationships.

23.     On or about November 25, 2024, during a telephone conversation with Mr. Bobby Hotaling—a risk-management professional with whom Bianchi had a longstanding business relationship—Patel stated that "Mark [Bianchi] has a drinking problem, drug problem, [and] gambling problem," and that Bianchi "is a f*cking criminal—a piece of sh*t." When discussing why Bianchi's son, Cristian, was no longer working with his father, Patel added: "If Mark was such a good guy, why would his son be working for us?"

24.     Patel's statements to Mr. Hotaling were categorically false. Bianchi has never had any issue with alcohol, drugs, or gambling, has never been convicted of any crime, and has never engaged in the misconduct Patel described.

25.     Mr. Hotaling was a key contact in the financial services industry who facilitated relationships between professionals like Bianchi and potential business partners. Patel made these statements in his capacity as someone who had worked directly with Bianchi and would have insider knowledge, lending a false air of credibility to his lies. Patel knew his statements were false; he worked closely with Bianchi throughout 2024 without ever witnessing or reporting any substance abuse issues or criminal behavior—because they did not exist.

26.     Patel's invocation of Bianchi's relationship with his son was especially malicious. Patel exploited his knowledge of Bianchi and his family to create the false implication that even Bianchi's own son had distanced himself because of supposed misconduct by Bianchi. Patel's weaponization of Bianchi's family relationships demonstrates actual malice and intent to cause maximum harm.

27.     Patel made his defamatory statements with actual malice because he knew that they were false from working closely with Bianchi and never witnessing any substance abuse issues, criminal misconduct, or erratic behavior. Patel timed his defamatory statements to coincide with Bianchi's launch of a competing business, demonstrating his intent to eliminate competition through slander rather than fair market competition.

28.     Unfortunately for Bianchi, Patel's defamation campaign achieved its intended

effect. Patel, who was perceived as an industry insider with credible information regarding his prior business partner, knowingly made false accusations about Bianchi that targeted the precise concerns of financial professionals: fraud, compliance, and character.

29.    As a direct and proximate result of Patel's false statements, Bianchi has suffered: (i) loss of relationships with financial advisors who heard and believed Patel's defamatory statements; (ii) damage to reputation in the specialized charitable partnership industry; (iii) lost profits from business opportunities destroyed by Patel; (iv) costs incurred from responding to false accusations and threats; and (v) emotional distress from attacks on his character. The damages to Bianchi are ongoing as Patel's false statements continue to circulate throughout the industry, requiring constant efforts by Bianchi being forced to rehabilitate his wrongfully-tarnished reputation.

30.    Patel acted intentionally, maliciously, and with willful and wanton disregard of Bianchi's rights, thus entitling Bianchi to punitive damages to the extent permitted by law.

## FIRST CAUSE OF ACTION
### (Defamation Per Se)

31.    Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs as though fully set forth herein.

32.    Beginning in or about November or December 2024, Defendant Patel published false and defamatory statements about Bianchi to third parties in the financial services industry, including representatives at Kingswood U.S. and Mr. Bobby Hotaling, a risk-management professional in the space.

33.    Patel's statements constitute defamation per se under New Jersey law because, among other things, they:

a.    Charge Bianchi with criminal conduct, including by calling him a "f*cking criminal" who had "stolen" financial products and business models;

b.    Accuse Bianchi of conduct and behavior incompatible with the practice of his profession, including substance abuse, theft, and being "risky to work

with";

c.      Impute loathsome diseases or conditions to Bianchi, specifically, addiction to drugs, alcohol, and gambling; and

d.      Impute characteristics that would damage Bianchi in his trade, business, and profession.

34.    Patel's statements were false; Bianchi has never been convicted of any crime, does not have substance abuse problems, and did not engage in any of the conduct Patel falsely accused him of.

35.    Motivated by his own financial scheme to acquire Bianchi's clients and contacts, Patel made the statements with actual malice because he knew they were false or acted with reckless disregard for their truth. Having worked closely with Bianchi (including his son, Cristian) and knowing his actual character and business practices, Patel had no factual basis to make the statements he made.

36.    No privilege applies to Patel's statements, which were made outside any judicial proceeding and were not made in good faith or for any legitimate purpose.

37.    Because Patel's statements constitute defamation per se, damage to Bianchi's reputation is presumed. In addition, Bianchi has suffered actual damages, including: (i) significant disruption to his Charitable Impact Program; (ii) loss of business opportunities and relationships; (iii) damage to his professional reputation in the financial services industry; (iv) ever-growing costs of defending himself against false accusations; and (v) mental suffering, shame, and hurt feelings.

38.    Patel's conduct was willful, wanton, and malicious, constituting actual malice and entitling Bianchi to an award of punitive damages under N.J.S.A. § 2A:15-5.12.

## SECOND CAUSE OF ACTION
### (Defamation Per Quod)

39.    Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs as though fully set forth herein.

7

40. In addition to the statements constituting defamation per se, Patel's statements conveyed defamatory meanings when considered in light of extrinsic facts known to the recipients and the surrounding industry context.

41. For example, Patel's statement to Kingswood representatives that Bianchi had "stolen" business products—when understood in the context of the financial-services industry and the parties' prior business dealings, conveyed the erroneous concept that Bianchi had engaged in unlawful or unethical misappropriation and that his current offerings were not legitimate.

42. Likewise, Patel's statement—"If Mark [Bianchi] was such a good guy, why would his son be working for us?"—falsely implied that Bianchi had engaged in such egregious misconduct of a kind that caused even his own son to distance himself from Bianchi. The recipients of this statement understood that Cristian Bianchi had previously worked with his father, and that his departure to work for Patel's camp was used to imply serious wrongdoing by Bianchi.

43. These statements were false. Bianchi did not "steal" any business products; the parties had executed a Termination Agreement that permitted Bianchi to pursue his own ventures. Bianchi's son's employment decision was unrelated to any "misconduct" by Bianchi.

44. Patel knew that these statements were false or made them with reckless disregard for their truth.

45. As a direct and proximate result of these statements, Bianchi has suffered special damages, including: (i) lost business opportunities; (ii) disruption of referral channels and capital raising campaigns for his Charitable Impact Program; and (iii) costs incurred in salvaging his business relationships and rehabilitating his professional reputation.

46. Patel's conduct was willful, wanton, and malicious, constituting actual malice and entitling Bianchi to an award of punitive damages under N.J.S.A. § 2A:15-5.12.

## THIRD CAUSE OF ACTION
### (Trade Libel / Commercial Disparagement)

47. Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs as though fully set forth herein.

8

48.    At all relevant times, Bianchi operated a lawful business providing charitable partnership investment structures and related financial services to qualified investors through licensed financial advisors, including capital raising campaigns for his Charitable Impact Program. Bianchi's business has always depended on his reputation for integrity, competence, and compliance with complex regulations.

49.    Patel published false statements specifically disparaging the quality of Bianchi's business practices and offerings, including by stating:

a.    That Bianchi was a "criminal" and had substance abuse problems, implying that Bianchi's business practices were unlawful and his services unreliable;

b.    That Bianchi had "stolen" business products, implying that Bianchi's current business offerings were based on misappropriated intellectual property and therefore illegitimate; and

c.    That Bianchi was "risky to work with," directly attacking the reliability of Bianchi's professional services.

50.    In context, these false statements directly disparaged the integrity, quality, and legality of Bianchi's professional services, attacking the core of his business offering: the Charitable Impact Program and its legitimate, compliant, and innovative tax mitigation structures.

51.    Patel made these false statements to Bianchi's actual and prospective customers and business partners, including but not limited to senior representatives at Kingswood U.S. who sell charitable partnership investments, Mr. Bobby Hotaling and other large-scale wealth management contacts who offer Bianchi's products to clients, and other industry professionals who could refer business to Bianchi.

52.    Patel made his false statements with actual malice and with the specific intent to destroy Bianchi's business relationships, prevent financial advisors from offering Bianchi's products, and eliminate Bianchi as a competitor.

53.    As a direct and proximate result of Patel's commercial disparagement, Bianchi has suffered special damages, including: (i) lost business opportunities and disruption to his Charitable

Impact Program; (ii) loss of relationships with financial advisors who subsequently and proximately refused to work with him; (iii) decreased revenue from damaged business relationships; (iv) costs of rehabilitating his commercial reputation; and (iv) lost profits from business diverted away from Bianchi.

54.    Patel's conduct was willful, wanton, and malicious, constituting actual malice and entitling Bianchi to an award of punitive damages under N.J.S.A. § 2A:15-5.12.

## FOURTH CAUSE OF ACTION
### (Intentional Interference with Prospective Economic Advantage)

55.    Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs as though fully set forth herein.

56.    Bianchi had reasonably probable future economic relationships with numerous parties in the financial services industry, each carrying a reasonable probability of future economic benefit, including:

a.    Prospective participants to Bianchi's Charitable Impact Program, through which Bianchi provided charitable partnership investment structures and of which Bianchi's campaign raising efforts were significantly disrupted by Patel's defamatory statements;

b.    Financial advisors at Kingswood U.S. who were actively marketing Bianchi's charitable partnership products to their clients and who represented a pipeline of future investment transactions and referral sources;

c.    Mr. Bobby Hotaling, a risk management professional who was positioned to introduce Bianchi to new clients and business partners, representing a channel for future deal flow and referrals; and

d.    Other wealth management firms and financial advisors seeking tax mitigation products for their clients.

57.    Patel knew of Bianchi's prospective economic relationships and of the probability

10

that Bianchi would derive future economic benefit from them, including anticipated investments, referral fees, and new client relationships. Patel worked directly with Bianchi, observed his client and advisor relationships during their collaboration, and understood—after the November 2024 Termination Agreement—that Bianchi would compete in the same market.

58.    Patel intentionally interfered with Bianchi's economic relationships through independently wrongful conduct, including the false and defamatory statements described above.

59.    Patel acted with actual malice, in that he acted with the specific intent to interfere with Bianchi's business relationships and to eliminate Bianchi as a competitor. The timing of Patel's statements—immediately after Bianchi's departure from the parties' prior relationship, and upon the launch of his own competing business—demonstrates Patel's intent to prevent Bianchi from succeeding in the marketplace and being motivated by diverting opportunities to Patel's own financial gain.

60.    Patel's conduct caused disruption of Bianchi's prospective economic relationships and caused Bianchi to lose anticipated business opportunities, expected referral income, and future economic benefits that would have flowed from those relationships.

61.    As a direct and proximate result of Patel's intentional interference, Bianchi has suffered damages, including: (i) lost business opportunities and disruption to his Charitable Impact Program; (ii) loss of relationships with financial advisors who subsequently refused to work with him; (iii) decreased revenue from damaged business relationships; (iv) costs of rehabilitating his commercial reputation; and (iv) lost profits from business diverted away from Bianchi.

62.    Patel's interference was not privileged or justified. Patel acted with malice, used unlawful means (defamation), had no legitimate business purpose, and sought only to destroy his competition.

63.    Patel's conduct was willful, wanton, and malicious, constituting actual malice and entitling Bianchi to an award of punitive damages under N.J.S.A. § 2A:15-5.12.

## FIFTH CAUSE OF ACTION
### (Negligent Interference with Prospective Economic Advantage)

64.     Plaintiff realleges and incorporates herein by reference all of the foregoing paragraphs as though fully set forth herein.

65.     Bianchi had reasonably probable prospective economic relationships with third parties in the financial services industry, as set forth above, each representing a reasonable probability of future economic benefit through anticipated transactions, referral sources, and new business development. Patel knew of these relationships based on his prior work with Bianchi and his direct exposure to Bianchi's business pipeline and professional network.

66.     Patel owed Bianchi a duty to exercise reasonable care to avoid causing foreseeable economic harm to Bianchi's existing and prospective business relationships, including the duty to refrain from negligently making or spreading false statements about Bianchi and his business practices, and the duty to verify the truth of any accusations before circulating them throughout the industry.

67.     Patel breached that duty by, among other things, negligently circulating false statements accusing Bianchi of criminality, substance abuse, and professional misconduct; by repeating and amplifying these false statements to multiple recipients; and by failing to "verify" the truth of his accusations before publishing them.

68.     Patel knew or should have known that his statements were untrue and that their publication to Bianchi's business contacts would likely disrupt Bianchi's economic relationships.

69.     Patel's negligent conduct proximately caused disruption to Bianchi's relationships, including financial advisors and wealth management firms who ceased or refused to work with Bianchi, and additional lost opportunities with industry participants to whom the statements were published.

70.     As a direct and proximate result, Bianchi has suffered economic harm, including: (i) lost profits; (ii) loss of business expectancy; (iii) reputational harm requiring remediation; and (iv) other consequential damages in an amount to be proven at trial.

12

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mark Bianchi respectfully requests judgment in his favor and against Defendant Rikin Patel for the following:

1.  General, special, and consequential damages according to proof at trial;

2.  Loss of past and future earnings and earning capacity;

3.  Damages to Bianchi's business reputation and commercial relationships;

4.  Exemplary and punitive damages in an amount sufficient to punish Patel and deter future misconduct;

5.  Pre-judgment and post-judgment interest at the maximum legal rate; and

6.  Costs of suit incurred herein;

7.  Attorneys' fees and costs as permitted by applicable law; and

8.  Such other and future relief as the Court deems just and proper.


DATED: March 17, 2026

JARDIM MEISNER SALMON
    SPRAGUE & SUSSER, P.C.
30-B Vreeland Road; Suite 100
Florham Park, NJ 07932
Telephone: (973) 845-7640
Facsimile: (973) 845-7645

By: _____
BENNET SUSSER

-and-

FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

13

By: */s/ William H. Dance*
    WILLIAM H. DANCE
    NICO L. BRANCOLINI
    MATTHEW J. AGHAIAN
    (Pro Hac Vice admission to be submitted)

Attorneys for Plaintiff MARK BIANCHI

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action triable by a jury.

DATED:  March 17, 2026
    JARDIM MEISNER SALMON
      SPRAGUE & SUSSER, P.C.
    30-B Vreeland Road; Suite 100
    Florham Park, NJ 07932
    Telephone: (973) 845-7640
    Facsimile: (973) 845-7645

By: _____
    BENNET SUSSER

-and-

FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504

By: */s/ William H. Dance*
    WILLIAM H. DANCE
    NICO L. BRANCOLINI
    MATTHEW J. AGHAIAN
    (Pro Hac Vice admission to be submitted)

Attorneys for Plaintiff MARK BIANCHI

14

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I certify that, to the best of my knowledge, information and belief, the matter in controversy herein is not the subject of another proceeding pending in any Court, any pending arbitration proceeding, or any administrative proceeding.


DATED:  March 17, 2026

JARDIM MEISNER SALMON
    SPRAGUE & SUSSER, P.C.
30-B Vreeland Road; Suite 100
Florham Park, NJ 07932
Telephone: (973) 845-7640
Facsimile: (973) 845-7645

By: _____
    BENNET SUSSER

-and-

FROST LLP
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441
Facsimile: (424) 600-8504


By:  */s/ William H. Dance*_____
    WILLIAM H. DANCE
    NICO L. BRANCOLINI
    MATTHEW J. AGHAIAN
    (Pro Hac Vice admission to be submitted)


Attorneys for Plaintiff MARK BIANCHI

15